1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  A.Y.O., a minor, by and through his guardian        No. 2:21-CV-00285-KJM-JDP
    ad litem, Francis Ocasio,
12                                                       FINAL PRETRIAL ORDER
                            Plaintiff,
13
            v.
14
    Enloe Medical Center, doing business as Enloe
15  Medical Center - Esplanade,

16                          Defendant.

17

18          On April 15, 2022, the court conducted a final pretrial conference.  Bronislav Draganov

19  appeared for plaintiff A.Y.O.  Chad Couchot appeared for defendant Enloe Medical Center.  After

20  hearing, and good cause appearing, the court makes the following findings and orders:

21  **JURISDICTION AND VENUE**

22          Jurisdiction is predicated on 28 U.S.C. §§ 2674, 1346(b).  Jurisdiction and venue are not

23  contested.

24  **JURY / NON-JURY**

25          The parties request a jury trial.  The court will seat nine (9) jurors.

26  /////

                                        1

**UNDISPUTED FACTS**

1.    This was the first pregnancy for Francis Ocasio, then 29 years of age.  The patient was known to be an insulin-dependent diabetic.  From the time of admission on the evening of November 5, 2018, through resuscitation of the newborn following delivery, the patient was managed by nurses employed by ENLOE, as well as by Dr. Green.

2.    Francis Ocasio presented to ENLOE for admission on the evening of November 5, 2018.  Initial fetal monitor assessments by nursing personnel at ENLOE demonstrated a Category I fetal heart rate (FHR) tracing.

3.    On November 7, 2018, during the 8:00 am hour, Dr. Green rounded on Mrs. Ocasio and confirmed that she was completely dilated, completed effaced and fetal station was +1.  A vaginal delivery was anticipated.  The nurse was documenting a Category I tracing.  She documented a caput (swelling of the head) at +1 station. Dr. Green returned, another bag of Pitocin was hung and contractions resumed.  In her note of 9:06 am, Dr. Green wrote of an "arrest of progress."  She wrote that if there was no significant change of station in the next hour, she would prepare the patient for cesarean section.

4.    Dr. Green returned to bedside just after 10:00 am and conducted the following measures, among others, within the next 30 minutes: placement of a Fetal Scalp Electrode (FSE), oxygen administration on the mother, removal of FSE due to it not tracing the FHR well, placement of a vacuum that led to the fetal head emerging from the introitus, development of shoulder dystocia.

5.    Due to the shoulder dystocia, a silent CODE BLUE was called. An episiotomy was cut. The CODE brought resuscitative personnel as well as the pediatric hospitalist. The dystocia was relieved with a vaginal delivery at 10:33 am. A.Y.O. was born without any discernible heart rate.

6.    Apgar scores, a clinical assessment of the newborn, were documented to be at 0, 0, 3, 3, 3 at 1, 5, 10, 15 and 20 minutes of age.  The cord arterial blood gas

demonstrated blood PH less than 6.89, PC02 greater than 98, P02 less than 15 with an oxygen saturation of 12%.

7.    The neonatal code record indicates that positive pressure ventilation was initiated at 18 seconds with 21% oxygen; oxygen was increased to 100% and chest compressions begun by 1 minute 45 seconds.  The heart rate was noted to be 109 at 4 minutes 45 seconds on the pulse oximeter (monitor) but chest compressions were continued because the heart rate could not be auscultated and pulses could not be palpated.  The patient was intubated at 5 minutes 57 seconds and a peripheral IV was placed at 6 minutes 12 seconds; a 1 ml dose of epinephrine (presumably 1:10,000 dilution) was delivered at 7 minutes.  By 7 minutes 17 seconds a heart rate of 132 was noted on the pulse oximeter and confirmed by auscultation and chest compressions were stopped.  The patient was then transported from the delivery room, arriving in the Special Care Nursery at 1047 (14 minutes after birth).

8.    All experts have been deposed.  A.Y.O. is now 3.5 years of age.  A.Y.O. has severe, global developmental delay, microcephaly, left hemiparesis, oral-motor dyscontrol with G-tube dependence, and history of seizure disorder.

**DISPUTED FACTUAL ISSUES**

1.    Whether Dr. Green was an actual agent of ENLOE and whether ENLOE is vicariously liable for any of her actions or omissions to act both prenatally and during intrapartum care.

2.    Whether Dr. Green met the standard of care of a Board-Certified OB/GYN in her care and treatment of the patient, and whether it caused injury to A.Y.O.

3.    Whether all Labor and Delivery (L&D) nurses met the standard of care during intrapartum care of this patient relative to the interpretation of the FHR, their report to Dr. Green, and in their access to the chain of command, and whether that caused injury.

/////

4.    Whether all post-partum resuscitative nursing personnel met the standard of care relative to the resuscitation of the newborn, specifically whether the pediatric hospitalist was informed of the depth of the ETT and whether their report or omission to report to the hospitalist of same was within the standard of care, and whether that caused injury.

5.    What the nature, extent and cause of A.Y.O.'s neurological injury is.

6.    What the cost of A.Y.O.'s future care will be.

7.    What A.Y.O.'s loss of prospective earnings will be.

8.    What assumptions should be used in for calculating a reasonable present value for the projected likely costs of A.Y.O.'s future medical care.

9.    What assumptions should be used in calculating a reasonable projection for the lost earnings of A.Y.O.

**SPECIAL FACTUAL INFORMATION**

1.    In accordance with Local Rule 281 (b) (6) and (b) 6) (iv), special information with regard to this tort action is included in the sections on Undisputed and Disputed Facts and relief sought.

**DISPUTED EVIDENTIARY ISSUES**

1.    Plaintiff's Motion in Limine to exclude evidence or argument that fetal monitoring has not led to a decrease in the incidence of Cerebral Palsy.

2.    Plaintiff's Motion in Limine to exclude ENLOE nurses from offering any present opinions as they were not identified in expert disclosures.

3.    Defendant's Motion in Limine to Preclude Any Evidence or Argument that Dr. Akiba Green was an agent of Enloe Medical Center.

4.    Defendant's Motion in Limine to Preclude Opinions of Barbara Greenfield Pertaining to Medical Anticipated Medical Charges as Unreliable and Irrelevant.

5.    Defendant's Motion in Limine to Preclude Duplicative/Cumulative Opinions by Dr. Howard Mandel and Dr. Joseph Ouzounian.

6.    Defendant's Motion in Limine to Require Plaintiff's Presence During Voir Dire.

4

**STIPULATIONS / AGREED STATEMENTS**

1. The parties have stipulated Dr. Green was not an ostensible agent of Enloe.

2. The parties have stipulated that the anticipated life expectancy of AYO is 35.3 additional years from the date of July 1, 2022.

3. Reference to or evidence of prior or subsequent medical malpractice proceedings against Enloe Medical Center, Dr. Akiba Green or any other physician who may testify in this case shall not be introduced or admitted at trial.

4. Reference to or evidence of Bruce Fagel, Plaintiff's counsel, being a medical doctor shall not be introduced or admitted at trial.

5. There will be no reference to medical literature outside of the narrow hearsay exception articulated in F.R.E. 803(18), and the literature itself will not be admitted as evidence.

6. Reference to or evidence of professional liability insurance shall not be introduced or admitted at trial.

7. Reference to or evidence of the limitations of the Medical Injury Compensation Reform Act of 1975 (MICRA) shall not be introduced or admitted at trial.

8. The opinions and conclusions of expert witnesses shall be limited to those expressed in their written reports, as well those expressed during their respective depositions

**RELIEF SOUGHT**

Plaintiff:

Relative to economic relief and special damages in particular, expert economist, Dr. Formuzis, has analyzed and calculated the present cash value and total future dollars for A.Y.O.'s economic damages in this case utilizing a life expectancy provided by expert neurologist, Dr. Olson, of 35 years total. Based on that life expectancy, the present cash value of future medical care amounts to $16,914,844 with no health insurance or Medicaid, and $14,349,082 with health insurance.  Offset for Social Security Disability.

/////

Dr Olson has testified that A.Y.O. lost 100% of his earning capacity.  Dr. Formuzis also calculated A.Y.O.'s loss of future earning capacity and testified that the present value of future loss of earnings for a male with college degree is $2,916,029.

Liens remain ongoing and variable.  Relative to general damages, A.Y.O. has a separate general damage claim of $250,000.

Defendant:

Enloe seeks a judgment finding no liability because hospital staff met the standard of care and Dr. Green is not an agent of Enloe.

**POINTS OF LAW**

The parties shall alert the court to disputes about the applicable law and legal standards. Trial briefs addressing these points more completely shall be filed with this court no later than seven days prior to the date of trial in accordance with Local Rule 285.

**ABANDONED ISSUES**

1.    None.

**WITNESSES**

The plaintiff's witnesses are listed in Attachment 1.  The defendant's witnesses are listed in Attachment 2.  Each party may call any witnesses designated by the other.

A.    The court will not permit any other witness to testify unless:

(1)    The party offering the witness demonstrates that the witness is for the purpose  of rebutting evidence that could not be reasonably anticipated at the pretrial  conference, or

(2)    The witness was discovered after the pretrial conference and the proffering party makes the showing required in "B," below.

B.    Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the court and opposing parties of the existence of the unlisted witnesses so the court may consider whether the witnesses shall be permitted to testify at trial.  The witnesses will not be permitted unless:

      (1)     The witness could not reasonably have been discovered prior to the discovery cutoff;

      (2)     The court and opposing parties were promptly notified upon discovery of the witness;

      (3)     If time permitted, the party proffered the witness for deposition; and

      (4)     If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

**EXHIBITS, SCHEDULES AND SUMMARIES**

Plaintiff's exhibits are identified on attachment 3.  At trial, plaintiff's exhibits shall be listed numerically.  Defendant's exhibits are identified on attachment 4.  At trial, defendant's exhibits shall be listed alphabetically, first A, B, C, etc., then AB, AB, AC, etc., then BA, BB, BC, and so on through ZZ.  The court encourages the parties to generate a joint exhibit list to the extent possible.  Joint Exhibits shall be identified as JX and listed numerically, e.g., JX-1, JX-2.

All exhibits must be premarked.

The parties must prepare exhibit binders for use by the court at trial, with a side tab identifying each exhibit in accordance with the specifications above.  Each binder shall have an identification label on the front and spine.

The parties must exchange exhibits no later than **twenty-eight days before trial**.  Any objections to exhibits are due no later than **fourteen days before trial**.

    A.     The court will not admit exhibits other than those identified on the exhibit lists referenced above unless:

      1.     The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not have been reasonably anticipated, or

      2.     The exhibit was discovered after the issuance of this order and the proffering  party makes the showing required in Paragraph "B," below.

    B.     Upon the discovery of exhibits after the discovery cutoff, a party shall promptly inform the court and opposing parties of the existence of such exhibits so that the

court may consider their admissibility at trial. The exhibits will not be received unless the proffering party demonstrates:

    1.     The exhibits could not reasonably have been discovered earlier;

    2.     The court and the opposing parties were promptly informed of their existence;

    3.     The proffering party forwarded a copy of the exhibits (if physically possible) to the opposing party.  If the exhibits may not be copied the proffering party must show that it has made the exhibits reasonably available for inspection by the opposing parties.

**DEPOSITION TRANSCRIPTS**

Counsel must lodge the sealed original copy of any deposition transcript to be used at trial with the Clerk of the Court on the first day of trial.

**FURTHER DISCOVERY OR MOTIONS**

The parties do not anticipate filing any discovery motions.

**AMENDMENTS AND DISMISSALS**

The parties do not anticipate any amendments of pleadings, dismissals, additions or substitution of parties.

**SETTLEMENT**

The parties last engaged in private mediation in 2020.  The parties agreed to attend a settlement conference with the assigned Magistrate Judge.  The settlement conference is set for **September 7, 2022, at 10:00 a.m**.  The parties shall contact the Magistrate Judge's chambers to confirm details for the conference.

**MOTIONS *IN LIMINE***

The following motions have been decided based upon the record presently before the court.  Each ruling is made without prejudice and is subject to proper renewal, in whole or in part, during trial.  If a party wishes to contest a pretrial ruling, it must do so through a proper motion or objection, or otherwise forfeit appeal on such grounds.  *See* Fed. R. Evid. 103(a); *Tennison v.*

1   *Circus Circus Enters., Inc.*, 244 F.3d 684, 689 (9th Cir. 2001) ("Where a district court makes a

2   tentative *in limine* ruling excluding evidence, the exclusion of that evidence may only be

3   challenged on appeal if the aggrieved party attempts to offer such evidence at trial." (alteration,

4   citation and quotation omitted)).  In addition, challenges to expert testimony under *Daubert v.*

5   *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) are denied without prejudice.  Should a

6   party wish to renew a Daubert challenge at trial, it should alert the court, at which point the court

7   may grant limited voir dire before such expert may be called to testify.

8           Based on the parties joint statement and the court's schedule, the court sets the brieing

9   schedule as follows:

10          Motions in limine oppositions are due May 13, 2022;

11          Motions in limine replies are due May 20, 2022;

12          Hearing on the Motions in limine will be held on **June 17, 2022 at 10:00 a.m.**  As

13   provided by the court's current standing policy the hearing will be held in person absent an

14   appropriate request for a zoom appearence.

15   **JOINT STATEMENTS OF THE CASE**

16          This medical malpractice action involves the November 7, 2018, birth of Plaintiff A.Y.O.

17   at Enloe Medical Center (ENLOE) in Chico, California (Butte County).  A.Y.O.'s birth was

18   attended by OB/GYN, Akiba Green, DO and nurses employed by ENLOE.  A.Y.O. experienced a

19   hypoxic brain injury and has since been diagnosed with spastic quadriplegic cerebral palsy,

20   cortical visual impairment, and severe global developmental delay.

21          A.Y.O., along with his mother and father, Francis Ocasio and Alexander Ocasio, brought

22   suit against Dr. Green and ENLOE in a State complaint filed April 2, 2019, with Francis Ocasio

23   as his guardian ad litem.  The basis for A.Y.O.'s claim was Negligence.  The basis for Francis

24   Ocasio's Complaint was Negligence and Negligent Infliction of Emotional Distress.  The basis

25   for Alexander Ocasio's complaint was Loss of Consortium.

26          Mediation on July 17, 2020 resulted in Dr. Green stipulating to settlement for policy

27   limits.  Dr. Green's Dismissal was filed October 6, 2020.  A second Mediation occurred on

28   November 23, 2020, without favorable result.  A.Y.O. and his parents moved to Texas.  A.Y.O.

1   alone brought suit in Federal Court, Eastern District based on Diversity Jurisdiction per 28 USC

2   § 1332(a) and the fact that the birth occurred in the Eastern District.  The Complaint was filed

3   February 12, 2021.  The State Court action was dismissed with prejudice on February 7, 2022.

4          A.Y.O. contends that ENLOE, its agents and employees (including Dr. Green as their

5   actual agent) was negligent in the care and management of the labor and delivery and in failing to

6   advocate for and perform cesarean-section surgery sooner than they did.  A.Y.O. also contends

7   that ENLOE staff were negligent in the attempted resuscitation of A.Y.O. after his birth.

8          Defendant ENLOE asserts that the doctors and nurses met the standard of care in every

9   respect by responding appropriately to the information they had while caring for A.Y.O. and

10  Francis Ocasio.  The parties have stipulated that Dr. Green was not an ostensible agent of

11  ENLOE.

**SEPARATE TRIAL OF ISSUES**

13         The parties do not seek bifurcation.

**IMPARTIAL EXPERTS OR LIMITATIONS OF EXPERTS**

15         The parties do not seek the appointment of an impartial expert.  Plaintiff however has

16  designated a non-retained expert, pediatric neurologist, Dr. Asaikar, who has been deposed and is

17  expected to offer testimony on the issue of causation.

**ATTORNEYS' FEES**

19         Plaintiff's attorney fees are based on California Business & Professions Code section

20  6146.  Defendant maintains that, under section 6146, plaintiffs' attorney's fees for a recovery

21  against Enloe are based on a sliding scale.  Enloe submits that analysis of the proper methodology

22  for calculating the monetary amount of attorney's fees in this case is premature.  Enloe does not

23  agree with Plaintiff's analysis of annuities but will address those issues in motions in limine

24  and/or a trial brief.

25  /////

26  /////

**TRIAL DATE AND ESTIMATED LENGTH OF TRIAL**

Jury trial is set for **January 3, 2023 at 9:00 a.m.** in Courtroom Three before the Honorable Kimberly J. Mueller. Trial is anticipated to last **14 days**. The parties are directed to Judge Mueller's trial schedule outlined on her web page on the court's website.

**PROPOSED JURY VOIR DIRE AND PROPOSED JURY INSTRUCTIONS**

The parties shall file any proposed jury voir dire seven days before trial. Each party will be limited to ten minutes of jury voir dire.

The court directs counsel to meet and confer in an attempt to generate a joint set of jury instructions and verdicts. The parties shall file any such joint set of instructions fourteen days before trial, identified as "Jury Instructions and Verdicts Without Objection." To the extent the parties are unable to agree on all or some instructions and verdicts, their respective proposed instructions are due fourteen days before trial.

Counsel shall e-mail a copy of all proposed jury instructions and verdicts, whether agreed or disputed, as a word document to kjmorders@caed.uscourts.gov no later than fourteen days before trial; all blanks in form instructions should be completed and all brackets removed.

Objections to proposed jury instructions must be filed seven days before trial; each objection shall identify the challenged instruction and shall provide a concise explanation of the basis for the objection along with citation of authority. When applicable, the objecting party shall submit an alternative proposed instruction on the issue or identify which of his or her own proposed instructions covers the subject.

**OBJECTIONS TO THIS ORDER AND CONCLUSION**

Each party is granted fourteen days from the date of this order to file objections to the same. If no objections are filed, the order will become final without further order of this court.

DATED:  May 5, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE